No. 10,107.

Mrs. Julia Weeks, tutrix, vs. New Orleans, Spanish Fort and Lake Railroad Company.

Passengers crossing a railroad track at a station, in order to leave or board a train halted for that purpose, are not held to the exercise of the same care and diligence which are ordinarily exacted from persons crossing tracks, but are authorized to assume that the railroad corporation will so order its trains that he will be safe from harm on the track which he is thus invited and required to cross-in order to secure his passage,

But where a person attempts to board the train while moving, and after it has left the station, he no longer acts on the invitation or stands under the protection of the company, and, while crossing or occupying the track, is bound to use proper care for his own protection.

Evidence discussed and conclusion reached that the injured party here was subject to the last mentioned rule.

Having thus negligently stood upon the track in full view of the approaching train, which rang its bell and sounded its whistle, and having failed to use his senses in his eager absorption in the attempt to board a moving train, in itself an improper and indiscreet act, he must be held guilty of contributory negligence, which debars recovery.

Weeks, tutrix, vs. Railroad Company.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Walter D. Denègre* for Plaintiff and Appellee:

The evidence shows that the accident resulted from the negligence of defendant and failure of their employees to comply with their own rules and regulations, and the jury so found by their verdict. Their verdict should be sustained, with the increased damages claimed.

The defense of contributory negligence on the part of plaintiff is not sustained by the evidence nor under the law.

Increasing verdicts is a matter within the jurisdiction of the Supreme Court, and it must do justice when the jury has given inadequate compensation. Sullivan vs. V., S. & P. R. R., 39 Ann, 803, and cases cited.

Contributory negligence, in order to be a defense, must be such negligence as was the proximate cause of the injury. Hansen, tutor, vs. Railroad, 38 Ann. 116; Beads on Contributory Negligence, sec. 10; Meeks vs. R. R, Co., 56 California, 513.

When the negligence of the defendant greatly multiplies the chances of accident to the plaintiff, and is of a character naturally leading to the occurrence, the mere possibility that it might have happened without the negligence is not sufficient to break the chain of cause and effect between the negligence and the injury.

Courts in such matters consider the natural and ordinary course of events, and do not indulge in fanciful suppositions. Reynolds vs. Railroad, 37 Ann. 698.

The rule requiring a traveler on a highway crossing a railroad track to use his eyes and ears to ascertain whether a train is approaching, does not apply to passengers who are crossing a track at a station to get on a train.

It is to be assumed that a railroad corporation, in the exercise of ordinary care, will so regulate its trains that the road will be free from obstruction or interruption when passenger trains are still at a depot receiving and delivering. Terry vs, Jewett, 78 New York, 314; Brassell vs. Railroad, 84 New York, 241; Klein vs. Jewett, 26 New Jersey Equity, 474; Jewett vs. Klein, 27 New Jersey Equity, 551; Moses vs. Railroad, 39 Ann. 653, and authorities.

When a railroad company provides no way of approach to a passenger train except by crossing on a level another track of the railroad, a passenger is fully justified in concluding that he will be safe from harm from a train on the track which he is thus obliged to cross in order to secure his passage. Jewett vs. Klein, 27 N. J. Equity, 551.

Railroad companies are held to the greatest care and diligence, both in regard to the machinery and equipment of the road and the conduct and acts of their officers, agents and employees. Hansen, tutor, vs. Railroad, 38 Ann. 111, and cases cited; Moses vs. Railroad, 89 Ann. 653.

Running down a passenger who is about boarding another train at a depot or station is gross and culpable negligence. Jewett vs. Klein, 27 N. J. Equity, 551.

Failure to introduce testimony of the engineer raises a presumption of negligence against the company. 35 Ann. 698, Day vs. Railroad; 38 Ann. 778, Ketchum vs. Railroad.

*Robert Mott, Harry H. Hall* and *C. P. Drolla* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. At the point with which we are concerned, the defendant's double-track railroad runs along Bienville street.

At the intersection of Bienville and Napoleon streets lies, on one side of Napoleon street, a square known as Loeper's Park, and on the other or city side a vacant square known and used as a base ball green.

Loeper's Park contains a garden, buildings, places of refreshment, dancing platform, etc., and is used for picnics and a place of resort on Sundays. Its entrance-gate is on Bienville, about 35 feet from Napoleon street.

On Sunday, August 8, 1886, defendant's train, coming from the lake to the city along the track farthest from the park and base ball green, stopped at Loeper's Park gate and took on a number of passengers. It then moved on and, while moving, twenty-five or thirty boys, who had been engaged in base ball on the green, came running towards the train, crossing the intervening track or being upon it, and began boarding the moving train. All succeeded in catching on except the son of plaintiff, an intelligent boy of fifteen years, who waited for the rear coach and was standing on or near the intervening track when the outgoing train running on said track came along and struck him, inflicting severe injuries. The point at which he was struck was about one hundred feet from Loeper's Park gate, which point had been reached by the rear car of the ingoing train.

The present action is brought to recover damages for the injury thus inflicted.

The substantial allegations of the petition, as to the grounds of liability, are "that the injury was caused by the gross negligence, carelessness and want of skill of the defendant's agents and employees;" that the boy "was lawfully in the position occupied by him when run over, about boarding the incoming train at the spot where he was run over, and where said trains usually stopped for Loeper's park;" and that "the said minor was in no way negligent or at fault."

We quote the language of the Supreme Court of the United States as follows :

"The question in such cases is, first, whether the damage is occasioned entirely by the negligence or improper conduct of the defendant, or, secondly, whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of personal care and caution, that, but for said neglect or want of care and caution on his part, the misfortune would not have happened. In the former case the plaintiff is entitled to recovery, and in the latter he is not." R. R. Co. vs. Jones, 95 U. S., p. 441.

The same doctrine is fully sustained by our own jurisprudence and was announced by us in the following terms: "Where the injury re-

sults from the negligence of plaintiff and the negligence of the defendant in such manner that the negligence of each may be considered as a juridical cause of the injury, the law will not undertake to apportion either the blame or the damage." Summers vs. R. R. Co., 34 Ann. 144; Childs vs. R. R. Co., 33 Ann. 156.

### I.

The main ground upon which negligence is imputed to defendant is that the outgoing train was violating the following general order issued for the government of its conductors and engineers:

"Under no circumstances will you allow your trains to pass each other while taking on or discharging passengers at street crossings. In cases where trains meet at street crossings, the rear coach of the train having the crossing must have passed the pilot of the waiting engine before such engine is permitted to start."

We think it very clear that this order only means that one train shall not run by another when the latter is stopped at a street crossing or other stopping place taking on or discharging passengers, but, in such case, must halt and stand until the latter train has started and entirely passed the pilot of the waiting engine. The rule is an eminently proper one, and if the accident had resulted from its violation and the boy had been run over while properly and lawfully boarding a halted train at its stopping place, the fault of defendant would have been so gross that only the clearest proof of contributory negligence equally gross could have saved defendant. Even independently of the violation of its own express rule, the case would then have fallen under the domination of a well-considered line of authorities which hold, in substance, that passengers crossing a track at a station to leave or get on a train halted for that purpose, are not held to the exercise of the same care and vigilance which are ordinarily exacted from persons crossing railroad tracks, but are authorized to assume that the railroad corporation will so regulate its trains that he will be safe from harm on the track which he is thus invited and required to cross in order to secure his passage. Terry vs. Jewett, 78 N. Y., 314; Brassell vs. R. R., 84 N. Y., 241; Klein vs. Jewett, 26 N. J. Eq., 474; Jewett vs. Klein, 27 id., 551.

But, in the instant case, the evidence makes it clear that the ingoing train had completed its stop, and was actually moving on before the outgoing train was near, and that the latter was, therefore, not required to halt under the letter or spirit of the rule, but had the right to assume that the operation of receiving and discharging passengers had been completed and that it might safely pass.

In point of fact, the engine of the outgoing train passed the last car of the incoming train at a point considerably beyond Napoleon street, both trains being entirely clear of the crossing, and at this point the boy was injured.

So far as appears from the evidence the operation of receiving and discharging passengers was completed and the track was clear until this crowd of boys came running from the base ball ground to board the moving train and crossed or occupied the track in front of the outgoing train and so little in advance of it that it is doubtful whether it could have been stopped in time to avoid the accident.

The evidence on the last point is contradictory but even granting that the boys were on the track when the outgoing train was further off, yet the officers of the latter might well have assumed that they would succeed in boarding the other train or otherwise get out of the way in time; and, in point of fact, all actually did so except young Weeks.

Although the petition alleges that the spot where the boy was hurt was where " the trains usually *stopped* for Loeper's Park," yet there is some effort to show that the trains were in the habit of *slowing up*, without stopping, for the purpose of receiving or discharging passengers at the base ball green, and that, therefore, the boys, in thus boarding the moving train, were acting on the invication of defendant and thus stood under its protection.

We have examined the evidence on this point with great care, and far from establishing such custom or habit, it very clearly establishes that when the train had passengers to receive or discharge either for the green or the park, it stopped, and that its stopping place was Loeper's Park gate, which, on Sundays and picnic days, was a regular stopping place and, on other days, was a signal station where it stopped when signalled. No doubt boys from the green did sometimes jump on or off the train as it moved slowly away from or up to its stopping place at the gate; but this was not by invitation of the company which stopped its trains for the purpose of receiving or discharging passengers at this point and had the right to expect that such passengers would board or leave the train while thus halted. On this occasion the train undoubtedly did stop and ample opportunity was afforded Weeks to take his passage in a lawful and proper manner.

We need not discuss other features of negligence charged against the defendant, deeming it sufficient to show that at the time of the accident Weeks was not in the position which he occupied under any circumstances which made defendant the guarantor of his safety or

exempted him from the obligation of using proper care for his self-protection.

## II.

This brings us to the question of contributory negligence.

The boy Weeks was attempting to board a moving train, which is universally recognized as a negligent and indiscreet act, constituting such contributory negligence as will debar him from recovering for injury received while so engaged. Wood's Railway Law, 1155; Knight vs. Railroad, 23 Ann. 462; Phillips vs. Railroad, 49 N. Y., 177; Railroad Company vs. Scales, 90 Ill., 586.

In addition to this, he was upon or in dangerous proximity to a railroad track in a position which, the authorities universally agree, threw upon him the duty of looking and listening and using all his senses to discover and avoid the danger necessarily incident to such a situation.

Said the Supreme Court of the United States in a case much more favorable to the injured party than this: "The failure of the engineer to ring the bell or sound the whistle, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees was no excuse for negligence on her part. She was bound to listen or to look before attempting to cross the track, in order to avoid an approaching train, and not walk carelessly into the face of possible danger. Had she used her senses she could not have failed by them to hear and see the train which was coming. If she made use of them and walked thoughtlessly on the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain. If, using them, she saw the train coming, and yet undertook to cross the track instead of waiting for the train to pass, and was injured, the consequence of her mistake and temerity cannot be cast upon the defendant. No railroad can be held for failure of that kind. If one chooses, in such a position, to take risks, he must bear the consequences of failure. Railroad Co. vs. Houston, 95 U. S. 701; 2 Wood's Railroad Law, 1302 to 1324, and cases there cited; Houston vs. Railroad Co., 39 Ann. 796.

Now, in the instant case, Weeks was not merely crossing but standing on a track in full view of a nearly approaching train, which rang its bell and sounded its whistle. Everybody else saw the train and heard its signals, and with the slightest use of his own senses he might and should have done so. His failure was attributable solely to his eager absorption in the performance of an act in itself improper, indiscreet and negligent.

Under such circumstances it is impossible to absolve him from the charge of gross contributory negligence and to cast upon the defendant the consequence of his own fault.

It is, therefore, ordered, adjudged and decreed that the verdict and judgment appealed from be annulled, avoided and reversed, and that there now be judgment in favor of defendant and rejecting plaintiff's demand at her cost in both courts.