LAVINA W. CHAFFEE *vs.* THE OLD COLONY RAILROAD COMPANY.

Boarding or attempting to board a moving railroad train is an improper and dangerous act. The railroad company's invitation to its passengers to board its train is withdrawn the moment the train begins to move.

A., without giving notice of his intention to return, left a train on the east track to check his baggage in the station west of the tracks. On coming out of the station his train had started, and a train on the west track was moving up in plain sight to the station. This train had waited for the train on the east track to start, before it moved up in the opposite direction on the west track to the station. A. ran across

the west track in front of the train to board the moving train on the east track, and by one of the trains was fatally injured.

*Held,* that as a matter of law A. was guilty of contributory negligence.

DEFENDANT'S petition for a new trial.

*February* 27, 1892.    MATTESON, C. J.    This is an action of the case brought under Pub. Stat. R. I. cap. 204, §§ 15, 18.    The plaintiff is the widow of William T. Chaffee, and sues to recover damages for his death, occasioned, as she alleges, by the negligence of the defendant.

On September 6, 1890, said William T. Chaffee was a passenger on the train known as the Lowell train on the railroad of the defendant.    He was on his way from Attleboro', Mass., where he resided, to Providence.    When Pawtucket was reached, Chaffee left the train, which stood upon the south-bound track, or track used by trains going southerly, and crossing the north-bound track, or track used by trains going northerly, entered the men's waiting-room of the station house for the purpose of having a satchel checked.    He did not notify the conductor or any of the trainmen that he was going to leave the train, or that he intended to return to it.    While the train was at the station, a train for Boston on the north-bound track approached, either slackening its speed or coming to a stop — upon this point the testimony is conflicting — south of Broad Street, which crosses the tracks at the southerly end of the station platform, in order that the south-bound train might get away from the station before the north-bound entered it.    Time having been given for passengers to leave and to get on board the south-bound train, and no other passenger appearing to enter the train, and it being a few minutes past its schedule time for leaving Pawtucket, the south-bound train started for Providence.    As soon as the engine of the south-bound train had crossed Broad Street, the north-bound train started, or, if not completely stopped, quickened its speed, and hauled into the station at a rate of about five miles an hour.    At this time there was no person on the north-bound track in front of the north-bound train, but when it had started, or quickened its speed, as stated, Chaffee came out of the door of the men's waiting-room, and without looking to see whether a train was coming, and without heeding the warning shouts of persons on the platform, crossed the north-bound

track in front of the approaching train, and attempted to get on board of the south-bound or outgoing train, his whole attention being absorbed apparently in his purpose and attempt to get on board that train.   By the time he had crossed the north-bound track the south-bound train had attained considerable speed, as shown by the fact that he gave up the attempt to get on the platform of the car for which he had started and stepped back towards, or on to, the north-bound track to wait for the other end of the car to come along.   Whether he was struck by the engine of the incoming train and thrown against one of the cars of the outgoing train, or in his attempt to board the latter lost his footing and was thrown to the ground and struck by the steps or wheels of a car of the latter, the testimony does not clearly show.   He was so severely injured that he was rendered unconscious and died in a few hours, without having regained consciousness.   A plat of the location, showing the situation of the station platforms, tracks, and the Broad Street crossing, was used at the trial.   It appeared thereby, and by the other testimony, that the approaching train could have been seen by the deceased for several hundred feet before it reached the station.   The jury returned a verdict for the plaintiff for $6,000.   The defendant petitions for a new trial, and assigns as one ground for new trial that the verdict is against the evidence.

If it be conceded for the purpose of the present inquiry that the defendant was guilty of negligence in running its north-bound train into the station before the south-bound train had entirely cleared it, we nevertheless do not think the verdict can be sustained.

If the deceased, in his attempt to board the south-bound train when it was in motion, lost his footing, and, falling to the ground, received his injury in consequence of being struck by the steps or wheel of a car upon the train he was endeavoring to board, the plaintiff cannot recover, for the testimony shows no negligence on the part of the defendant's servants in the starting or management of that train.

Nor do we think the plaintiff is entitled to recover if the deceased was struck by the engine of the incoming train, and received the injury which caused his death by being thrown by that engine

against a car of the outgoing train.  Ordinary prudence requires one who is about to cross a railroad track to use his senses, to look, to listen, for the purpose of ascertaining whether he can cross in safety.  This, as was said in *Ormsbee* v. *Boston & Providence R. R. Corp.* 14 R. I. 102, is an established rule, both of law and experience.  In *Dublin, Wicklow & Wexford R. R. Co.* v. *Slattery*, L. R. 3 App. Cas. 1155, Lord Chancellor Caines remarks: " If a railway train, which ought to whistle when passing through a station, were to pass through without whistling, and a man were, in broad daylight, and without anything either in the structure of the line or otherwise to obstruct his view, to cross in front of the advancing train and to be killed, I should think the judge ought to tell the jury that it was the folly and recklessness of the man, and not the carelessness of the company, which caused his death." It is true the rule is subject to exceptions, and one of these is when it is necessary for a passenger going to or alighting from a train to cross a track to reach the train or station.  This exception rests upon the implied invitation of the company to cross its track, and its implied assurance that the passenger may safely do so.  But such implied invitation and assurance continue only so long as the train is stopped at the station for the purpose of receiving passengers and allowing them to alight.  When a reasonable time for this purpose has been given, and the train has started on its way, such implied invitation and assurance are at an end, and the obligation to look both ways before crossing the track revives.  *Weeks, tutrix,* v. *New Orleans, Spanish Fort & Lake R. R. Co.* 40 La. Ann. 800, was a case closely resembling the present.  In that case the defendant had a double track railroad running on Bienville Street in New Orleans.  At the intersection of Bienville and Napoleon streets, on one side of the latter, was a square known as Loeper's Park, and on the other a vacant square known and used as a baseball green.  Loeper's Park contained a garden, buildings, dancing platform, etc., and was used as a place for picnics and of resort on Sundays.  The defendant's train, going towards the city along the track farthest from the park and baseball green, stopped at the park gate, and took on a number of passengers.  It then moved on, and, while moving, twenty-five or thirty boys, who had been engaged in baseball on the green, ran towards the train,

crossing the intervening track and standing upon it, and began to board the moving train. All succeeded in getting on, except the plaintiff's son, a boy fifteen years of age. He waited for the rear car, and was standing on or near the intervening track, when the outgoing train, running on that track, came along and struck him, inflicting severe injuries. The point where the boy was struck was about one hundred feet from the park gate, which point had been reached by the rear car of the ingoing train. The court held that when a person attempts to board a moving train, and after it has left the station, he no longer acts on the invitation or stands under the protection of the company, and while crossing or occupying the track is bound to use proper care for his own protection; and that the plaintiff's son, having thus stood upon the track in full view of the approaching train, which rang its bell and sounded its whistle, and having failed to use his senses in his eager absorption in the attempt to board a moving train, in itself an improper and indiscreet act, he was guilty of contributory negligence, which debarred the plaintiff's recovery. See, also, *Perry* v. *The Central R. R. Co.* 66 Ga. 746, in which it was held that it is not the duty of a railroad company to keep its track clear for those who may see proper to pursue its cars while leaving the station.

The plaintiff seeks to distinguish the present case from *Weeks, tutrix,* v. *New Orleans, Spanish Fort & Lake R. R. Co. supra,* in this, that in that case the train which the plaintiff's son was attempting to board had passed the park gate, the usual stopping place, by one hundred feet, when the boy was struck by the outgoing train; whereas, in the present case, the train was still partly within the station when the deceased, attempting to board it, was struck by the approaching train. The distinction does not seem to us material. The boarding of a moving train, whether in or beyond the station, is an improper and indiscreet act involving danger, and therefore an act not within any implied invitation of the railroad company, which must be regarded as withdrawn the moment the train begins to move.

A rule prescribed by the New York, Providence & Boston R. R. Co. and the defendant for the government of their employees, with reference to the station at Pawtucket, is to the effect that if a train on the south-bound track is standing at, or has not

entirely passed, the station, a north-bound train shall stop south of Broad Street, and allow the other train to clear the station before proceeding.

The plaintiff suggests that it is fair to presume that the deceased knew of this rule, and relied upon the supposition that it would not be violated. The rule was made for the government of the employees of the railroad companies in the management of trains, not for the guidance of the public. The testimony does not show that it was generally known to the public or to the deceased. But even if it could be shown that he did know of it, and relied upon its observance by the defendant's employees, we do not think such knowledge and reliance would absolve him from the duty of exercising ordinary care for his own protection; and the south-bound train being in motion, and the implied assurance of the defendant that he might safely be upon the track being withdrawn, ordinary care required him to look to see that no train was approaching which would endanger his safety.

Inasmuch, therefore, as the deceased, by reason of his entire absorption in his purpose and attempt to get on the moving train, failed to look to see whether a train was approaching before crossing the north-bound track, or before stepping back toward it or on it, while waiting for the end of the car which he was intending to board to come along, and paid no attention to the warning shouts of others who saw his danger as he himself might have seen had he looked, we think he was guilty of contributory negligence, and that the plaintiff is not entitled to recover.

The plaintiff contends that the question whether the deceased was guilty of contributory negligence was a question for the jury, and the jury having returned a verdict for the plaintiff, and therefore impliedly found that the deceased was not guilty of contributory negligence, the court ought not to disturb that finding. In *Clarke* v. *R. I. Electric Lighting Co.* 16 R. I. 463, 465, this court said that, though generally the question of negligence is a question of fact to be determined by the jury, yet when there is no controversy about the facts, or when it clearly appears from them what course a person of ordinary prudence would pursue, it is a question for the court. So, too, when the standard of duty is fixed, or when the negligence is clearly defined and palpable. We think

the question in the present case is clearly within the classes of cases laid down as exceptions to the general rule, and is, therefore, a question for the court rather than the jury.

  Defendant's petition for new trial granted.

  *Daniel R. Ballou, Frank H. Jackson & James M. Ripley,* for plaintiff.

  *Walter B. Vincent & Henry W. Hayes,* for defendant.