# NEWPORT.

---

WILLIAM ELLIOTT *vs.* THE NEWPORT STREET RAILWAY COMPANY.

On the trial of an action to recover damages for personal injuries alleged to have been sustained by the negligence of the defendant corporation, the testimony submitted to the jury by the plaintiff showed that the plaintiff, a passenger on one of the defendant's electric street cars which was propelled by the trolley system, and had another car in tow, was injured by being thrown from the first car and run over by the second. The cars were open ones with seats running crosswise, and with foot-boards on each side lengthwise of the car. All the seats of both cars and also the platforms were filled with passengers, and passengers were standing on the foot-boards. The plaintiff boarded the first car on Spring street in the city of Newport in the evening, and stood on the foot-board holding on to the two stanchions supporting the roof of the car on either side of him with his face turned towards the opposite side of the car. After passing eight trolley poles safely, the plaintiff, while in the act of taking his fare from his pocket, came in contact with the ninth trolley pole erected on the edge of the curbstone and ten and one-half inches distant from the outer edge of the foot-board on which the plaintiff stood, and was thrown to the ground and injured as stated. The plaintiff had never ridden over that part of the defendant's road before that time, and was ignorant of the location of the trolley pole by which he was struck. No objection was made by the conductor to the plaintiff's standing on the foot board, nor was he warned of any danger in doing so. The court directed the jury to return a verdict for the defendant.

*Held*, that on the testimony the court could not say, as a matter of law, either that the defendant was not negligent, or that the plaintiff was guilty of negligence which contributed to the accident; and, therefore, that the court was not warranted in directing a verdict for the defendant.

Common carriers of passengers are required to do all that human care, vigilance and foresight reasonably can, in view of the character and mode of conveyance adopted, to prevent accident to passengers; and the defendant ought to have foreseen the possible danger to which passengers on the foot-boards of

its cars, riding there by its permission, might be exposed, by a slight turn of the body sidewise, or by a slight inclination of it backward, in consequence of the close proximity of its track to its trolley pole at the point where the plaintiff was injured.

The question of contributory negligence is generally one for the jury ; the exceptions being, where the facts are not controverted, or it clearly appears what course a person of ordinary prudence would pursue ; or where the standard of duty is fixed, or the negligence is clearly defined and palpable.

The danger of being hit by a trolley pole is not such a peril as a passenger whom a railway company has undertaken to carry on the foot-board of its car, is bound to anticipate and be on the lookout for, unless he had knowledge of the close proximity of the track to the trolley pole.

A passenger who is injured by coming in contact with a trolley pole while riding on the foot-board of a car by permission of the railway company is not guilty of contributory negligence in not being sufficiently alert to hear warning calls to " look out for the poles," if he did not know of the dangerous proximity of the pole to the track, and if he did not actually hear the warnings, it not being his duty to look out for a warning against a danger which he was not bound to anticipate.

In the case at bar, the plaintiff was thrown from the car on which he was riding and run over by a car in tow. Besides the breaking of bones in his left foot, he suffered the loss of part of his right foot which was amputated at the instep. At the time of the accident the plaintiff was twenty-three years of age, earning forty-five dollars a month besides his board, estimated at twenty dollars a month more. He was prevented from pursuing any occupation for upwards of fourteen months, during which time he experienced much pain. He is permanently disabled from engaging in any pursuit which will require him to stand any considerable length of time.

*Held*, that a verdict of $6,950, would not be disturbed as excessive.

PLAINTIFF'S petition for a new trial.

*Providence, November* 8, 1893. MATTESON, C. J. This is an action of trespass on the case to recover damages for personal injuries alleged to have been sustained by defendant's negligence. The case was tried at the March term of the Supreme Court for Newport county. When the testimony on the part of the plaintiff had been submitted to the jury, the court directed a verdict for the defendant. The plaintiff thereupon excepted to the direction, and filed this petition for a new trial.

The testimony shows that the plaintiff was injured September 1, 1892, while riding on one of the defendant's electric cars in Newport. The facts attending the injury were these : The plaintiff boarded the car a few minutes past eight o'clock in the evening, at the foot of Touro street, on

Spring street, with the intention of riding to Morton Park in the southern part of the city. The car was an open one, with seats running crosswise and with steps or foot-boards on each side lengthwise of the car. This car had in tow another car. All the seats in both cars, and also the platforms, were filled with passengers, and passengers were standing on the foot-boards. The plaintiff took a position on the foot-board of the first car on the left hand or easterly side of the car as it was going south, between the second and third seats from the rear end of the car, standing with his face turned towards the opposite side of the car and holding on to the two stanchions supporting the roof of the car on either side of him. Instead of standing on the foot-board, the plaintiff might have stood, if he had seen fit, between the seats inside of the car. Shortly after the car had started, while the plaintiff was reaching for his money to pay his fare, he was thrown from the car by coming in contact with a trolley pole, fell to the ground and was run over by the wheels of the car in tow. No objection was made by the conductor to the plaintiff's standing on the foot-board, nor was he warned that there was any danger in doing so. Between Touro and Franklin streets the defendant's track ran close to the curbstone on the easterly side of Spring street. The cars were propelled by the trolley system. Between Touro and Franklin streets, the poles supporting the trolley wire were located on the edge of the curbstone, so that the distance from the rail to the inner side of the pole varied from twenty-six to twenty-eight inches. The distance between the inside of the poles and the outer edge of the foot-board of a passing car varied from ten to twelve inches; the distance in the case of the pole by which it is alleged the plaintiff was struck being ten and one-half inches. The plaintiff did not know of the location of the pole at the point where he was injured. He did not notice any poles from the time he got on to the car until he was struck, and could not have seen them in the position in which he stood, because they were behind him. He had never ridden over that part of the defendant's road prior to the accident, and was familiar with the street only as he

had occasionally driven through it. From the point where the plaintiff got on to the car to the point where he was thrown off, the car had passed eight poles,—that by which the plaintiff was struck being the ninth.

The question raised by the plaintiff's exception is, whether, on these facts, the court was justified in directing a verdict for the defendant. To have warranted the direction, it must have clearly appeared, so clearly that the court could say as a matter of law, either that the defendant was not negligent, or that the plaintiff was guilty of negligence which contributed to the accident. We do not think that either of these propositions was sufficiently clear to warrant the court in taking the case from the jury and directing a verdict for the defendant.

Common carriers of passengers are required to do all that human care, vigilance and foresight reasonably can, in view of the character and mode of conveyance adopted, to prevent accident to passengers. *Tuller* v. *Talbot*, 23 Ill. 357 ; *Meier* v. *Penn. R. R. Co.*, 64 Penn. St. 225 ; *Topeka City Railway Co.* v. *Higgs*, 38 Kans. 375 ; *Philadelphia & Reading R. R. Co.* v. *Derby*, 14 How. U. S. 468, 486. It is a matter of common knowledge that railway companies daily undertake to carry, as did the defendant on the occasion in question, passengers greatly in excess of the seating capacity of their cars ; that they stop their cars and take on passengers so long as there is standing room on platforms or foot-boards, and collect fares from those on platforms or foot-boards as well as from those within the cars. Ought not the defendant, in view of the rule prescribing the duty of carriers of passengers, to have foreseen the possible danger to which passengers on the foot-boards of its cars might be exposed by a slight turn of the body sidewise, or by a slight inclination of it backwards, in consequence of the proximity of its track to its trolley pole at the point where the plaintiff was injured ? We think so. *North Chicago Street R. R. Co.* v. *Williams*, 140 Ill. 275 ; 29 N. E. Rep. 672 ; *Topeka City Railway Co.* v. *Higgs*, 38 Kans. 375 ; *Gray* v. *Rochester*

*City & Brighton R. R. Co.*, 40 N. Y. St. Rep. 715 ; *Lehr* v. *Steinway & Hunter's Point R. R. Co.*, 118 N. Y. 556.

But the question which has been chiefly argued is whether, on the facts recited, it sufficiently appeared that the plaintiff was guilty of contributory negligence to justify the direction of the court. The defendant concedes that it is not negligence *in se* for a passenger to ride · on the foot-board of an open car, but contends that as the outside of a car is obviously more dangerous than the inside, it is incumbent on any one who rides there to exercise care commensurate with the danger. This proposition is doubtless correct. But we do not assent to the defendant's further contention that if the passenger is injured while riding on the foot-board it is *primâ facie* his own fault. Undoubtedly, by the law of this State, the burden is on him who sues for an injury to show that he was in the exercise of due care, and the question whether he was in the exercise of due care is to be considered with reference to the fact that he was riding in a dangerous situation ; but the question of contributory negligence is generally for the jury ; the exceptions being, where the facts are not controverted, or it clearly appears what course a person of ordinary prudence would pursue ; or where the standard of duty is fixed, or the negligence is clearly defined and palpable. *Clarke* v. *R. I. Electric Lighting Co.*, 16 R. I. 463, 465 ; *Chaffee* v. *Old Colony R. R. Co.*, 17 R. I. 658, 663. A passenger who rides on the foot-board of a car necessarily takes on himself the duty of looking out for and protecting himself against the usual and obvious perils of riding there, such, for instance, as injury from passing vehicles, or by being thrown off by the swaying or jolting of the car ; assuming, of course, proper management of the car, and proper construction and condition of the road. We do not think, however, that the danger of being hit by a trolley pole is such a peril as a passenger whom the railway company has undertaken to carry on the foot-board of its car is bound to anticipate and be on the lookout for, unless, indeed, it appears that the passenger had knowledge of the close proximity of the track to the trolley pole. He has a right to

assume that the railway company has performed its duty in so constructing its road that its passengers even on the foot-boards of its cars, riding there by its permission, shall not be exposed to injury by the unsafe construction of its road. *City Railway Co.* v. *Lee,* 50 N. J. Law, 435, 439.

The testimony does not show that the plaintiff knew of the close proximity of the defendant's track to its trolley poles. Moreover, the accident occurred in the evening, when, on account of the darkness, the danger of being struck by the pole would not be so apparent as in the day time. Nor does the testimony show that the posture of the plaintiff on the foot-board was an unusual one, or any movement of his which would naturally expose him to danger. The defendant's counsel argues that it is a necessary inference from the fact that he was struck that he was leaning backwards at a considerable angle. The plaintiff's testimony was that he was in the act of taking his fare out of his pocket. The defendant's counsel, in argument, stated that the plaintiff illustrated his testimony by raising his arm, as though to take his money out of his vest pocket. If this be so, the plaintiff's elbow, as he stood with his back to the trolley poles, would naturally project several inches beyond the line of his body, and a slight inclination would suffice to bring it into contact with a pole only ten and a half inches from the edge of the foot-board. The fact that the plaintiff had already safely passed eight poles gives probability to the theory that the accident was due to the lifting of his arm in the manner stated.

Plaintiff's petition for a new trial granted.

After the foregoing opinion the case was tried in the Common Pleas Division, and the plaintiff recovered a verdict. The defendant then filed a petition for a new trial.

*Providence, October* 26, 1894. MATTESON, C. J. The principal question raised by the defendant's exceptions and petition for new trial on the ground that the verdict is against the evidence, is as to the degree of care required of a passenger riding on the foot-board of a car. It is contended by the defendant that the plaintiff was guilty of contribu-

tory negligence, because if he had been paying attention he could have heard the warnings given to "look out for the poles." This contention rests on the assumption that it was the duty of the plaintiff, though he did not know of the dangerous proximity of the poles to the track, to have anticipated some possible danger and, therefore, to have been sufficiently alert to have heard the calls. We think this is too strict a rule to be applied to the plaintiff. In our former opinion we stated the rule which seemed to us applicable, as follows : "A passenger who rides on the foot-board of a car necessarily takes on himself the duty of looking out for and protecting himself against the usual and obvious perils of riding there ; such, for instance, as injury from passing vehicles, or of being thrown off by the swaying or jolting of the car ; assuming, of course, proper management of the car and proper construction and condition of the road. We do not think, however, that the danger of being hit by a trolley pole is such a peril as a passenger whom the railroad company has undertaken to carry on the foot-board of its car is bound to anticipate and be on the lookout for ; unless, indeed, it appears that the passenger had knowledge of the close proximity of the track to the trolley pole. He has a right to assume that the railway company has performed its duty in so constructing its road that its passengers, even on the foot-boards of its cars, riding there by its permission, shall not be exposed to injury by the unsafe construction of its road." *Ante,* p. 711. The charge of the court, taken as a whole, fairly and correctly stated this rule to the jury.

If the plaintiff was under no duty to listen for a warning, he is not to be charged with contributory negligence unless the warning was actually heard by him, or unless it be shown that he had knowledge of the danger of being struck by the pole. His testimony was that no warning was given to his knowledge, which was equivalent to a denial that he heard the warning. He also testified that he was unacquainted with the location of the poles, never having ridden on that part of the defendant's road prior to the accident, and being familiar with the street only by having casually driven

through it.   The conductor of the motor car when he first called out, "look out for the poles," while the car was stopped at Touro street, stood on the opposite side of the car from that on which the plaintiff was about to get on the car, and when he repeated the calls after the car had started, stood on the foot-board on the opposite side of the car from the plaintiff.   The brakeman and conductor of the tow car also gave similar warnings.   The plaintiff was accompanied by a young lady and the attention which he bestowed upon her may have prevented him from hearing the warnings given by the defendant's employees ; or he may have been prevented from hearing the warnings by the noise and confusion in the street and the noise of the cars after they had started.   Other witnesses, who occupied positions as favorable for hearing the calls as that occupied by the plaintiff, testified that they, too, did not hear the calls.   The question whether the plaintiff heard the warnings, as also that of his knowledge concerning the location of the poles near to the track, was for the jury.   The plaintiff's credibility and that of the witnesses whose testimony tended to corroborate him, was for the jury.   They found for the plaintiff, and it is not sufficiently clear that they made a mistake to justify us in setting aside their verdict as against the evidence.

The plaintiff, who at the time of the accident was twenty-three years of age, was severely injured.   Besides the breaking of two or three bones in his left foot, he suffered the loss of the front part of his right foot which was amputated at the instep.   At the time of the accident he was earning forty-five dollars a month besides his board, which he estimated at twenty dollars a month more.   He was prevented by his injuries from pursuing any occupation for upwards of fourteen months while his wounds were healing, during which he also experienced much pain.   By the accident he has been permanently disabled and debarred from engaging in any pursuit which will require him to stand any considerable portion of the time.   In view of these considerations, we cannot say that the verdict for $6,950 is so clearly exces-

sive as to lead us to believe that it was not a proper and honest exercise of the judgment of the jury.

Defendant's petition for a new trial denied, and dismissed with costs, and case remitted to the Common Pleas Division with direction to enter judgment on the verdict.

STINESS, J.   Non-concurs.

*Patrick J. Galvin & Charles Acton Ives,* for plaintiff.

*Darius Baker, David S. Baker, Jun., & William C. Baker,* for defendant.