# GEORGETOWN & TENNALLYTOWN RAILWAY CO. *v.* SMITH.*†

---

TRIAL; STREET RAILWAYS; NEGLIGENCE; CONTRIBUTORY NEGLIGENCE; CHARGE TO THE JURY.

1. An objection by the defendant, a railway company, in an action at law, that the trial court directed a verdict for its codefendant, a municipality, leaving the railway company the sole defendant, even if available under any circumstances, cannot properly be raised on an assignment of error that the trial court refused a prayer instructing the jury to

---

*Carriers—Cars.*—As to duty of carrier to furnish proper cars for passengers, see the authorities in editorial note to *Baltimore & P. R. Co.* v. *Swann,* 31 L. R. A. 313.

*Carriers—Negligence of Passenger.*—As to negligence of passenger in exposure of person at car window, see the presentation of the authorities in editorial note to *Richmond & D. R. Co.* v. *Scott,* 16 L. R. A. 91.

†See *Smith* v. *District of Columbia, post,* 370.

find for the defendant, where the record does not show that the question was raised in any way before the trial court. (Following *Washington Gaslight Co.* v. *Lansden,* 9 App. D. C. 508, and *Norman* v. *United States,* 20 App. D. C. 494.)

2. Where a street car passenger is injured by reason of the protrusion of his arm out of the side of the car, the question of whether he was guilty of contributory negligence is not one of law for the court, but of fact for the jury.

3. It is gross negligence for a street railway company to use cars which in passing each other are not more than 3 inches apart, and doubly negligent for it to run such cars with the panels taken out, and with the running rail placed where the passengers would naturally rest their arms; and, at the least, it is the duty of the company under such circumstances to see that one of the cars comes to a full stop and the other passes it very slowly.

4. Where a passenger in a street railway car, whose arm rested on the running rail and protruded beyond the side of the car, was struck by a passing car and killed, it was *held* that the trial court properly refused an instruction asked by the railway company, that if the deceased changed his position after the front of the car had passed him without striking him, and that by reason of such change of position he was struck by the car, the verdict should be for the defendant,—especially where the testimony showed that before the deceased was struck there was much shouting and ringing of gongs, sufficient to account for a natural shifting by him of his position.

5. And an instruction asked by the defendant in such a case was also properly refused, when to the effect that if the jury found that the deceased had been in the habit of passing over the defendant's road at the place of the accident, that would justify an inference that he had knowledge of the space between the cars,—especially where the evidence showed that, although cars of a similar construction had been in use for from six to twelve months, there was nothing to show how often the deceased had been a passenger, or from which it could be inferred that he had knowledge of the space between the cars.

6. A charge to the jury should be taken as a whole, and, when fair, an appellate court will not sustain an objection based upon a sentence in it which, taken by itself, may not express in happiest terms a proposition which is correct.

7. Where a passenger in an open street railway car was killed by a passing car, his arm resting at the time on the running rail and projecting beyond the side of the car, and it appeared that the space between the passing cars was about 3 inches wide, it was held that a statement in the charge of the trial court was not erroneous which said: "The whole question seems to come to the jury to determine whether or not, under

the form of the car that was used here, with the width of the track that was used here, with the style of open car built as it was, and with this rail in the position it was, there was anything this company ought to have done as a prudent and reasonable person to prevent the happening of an accident of this kind."

8. And it was not error for the trial court, in such a case, to say in its charge to the jury that "although the plaintiff's intestate may have been clearly at fault and negligent in putting his arm out, or his head, or whatever it was, yet if the defendant did not take such precautions as a prudent and reasonable person ought to take to prevent such an accident, I think the defendant would be liable,"—where the court had already granted a prayer for the defendant which told the jury that if the plaintiff's intestate was guilty of contributory negligence the plaintiff could not recover, although the defendant was found guilty of negligence.

9. Where, in such a case, the testimony shows that the motorman of the approaching car which struck the deceased saw the deceased and warned him to take his arm off the rail, it was not erroneous for the trial court to charge the jury in effect that, even if the deceased was guilty of negligence, if the defendant's servants saw him in a position of apparent danger, it was their duty notwithstanding his negligence to do all they could to prevent the accident, and if they failed to do so the defendant was liable.

No. 1444.   Submitted February 9, 1905.   Decided April 4, 1905.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon the verdict of a jury in an action to recover damages for death by wrongful act.                                                           *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment entered upon the verdict of the jury in favor of the appellee, Elizabeth B. Smith, the plaintiff below, for the sum of $9,000, with interest from January 22, 1904, and for costs.

The suit was brought to recover the sum of $10,000, damages accruing by reason of the negligence of the defendant, which resulted in the death of plaintiff's husband. In the suit as originally brought, the Distri : of Columbia wa. made a co-

defendant, but the court directed a verdict in its favor, and the railway company then became sole defendant. The facts pertinent to the case are these:

The deceased, Peter A. Smith, was the husband of the appellee and left also surviving him five children, the youngest a little over three years, and the oldest not quite nineteen years, of age. The accident causing his death occurred on the night of July 1, 1901. The deceased, a carpenter by trade, was a passenger on one of defendant's cars, and was on his way from Washington to his home at Tennallytown. The car was what is known as a "panel" car; that is, one which could be used as a closed car in winter and an open car in summer by the removal of the panels in the sides of the car. When these panels are out there is an opening from the floor almost to the top of the car. Upright posts between each seat hold the panels in place when they are used, and provide a support for a running rail along the sides of the car, which is so placed that when the passengers are sitting down their arms rest comfortably upon the running rod. He occupied the last seat on the left-hand side of the car, which was going north, and was sitting with his head back against the car and his arm resting on the running rail. The car crossed M street, going up Thirty-second street, and when it arrived at Prospect street, which runs on a parallel line with M street, and where there is a slight bend in the road, it passed a car coming in the opposite direction. The deceased was caught between the cars and drawn out of the one in which he was seated, and when the cars had passed he was lying dead between the tracks. As is usual when such an accident occurs, there is more or less conflict in the testimony as to how the accident occurred and what transpired just before and just after it. After the accident the cars were pushed back so that they were alongside each other, and the distance was measured between these uprights on each car, and was between 2½ and 3 inches. The space between the bolts that held the running bar was not more than 2½ inches. These large cars had been operated on the line from six to twelve months prior to the accident.

Charles H. Williams, a witness called on behalf of plaintiff, thus describes the accident: That when the car got to Prospect street witness heard a great commotion; that Prospect street runs on a parallel line with M street, and from 150 to 200 feet from M street, and runs from Thirty-second street west toward the University; that it does not cross Thirty-second street; that witness heard a great commotion and clanging of bells on the car coming from the north going towards the starting place, or station; that the road has double tracks; that Thirty-second street is of medium width; it is a narrow street; it is called a narrow street; that just as you get to Prospect street there is a slight bend in the road; that just as the car came around the curve he heard a crash, and he saw the body of deceased going out of the window or out of the panel; that the gong he heard sounded was one of the foot gongs on the front platforms of all the cars; that it appeared to witness that the noise and all the commotion was from the platform of the car coming from Tennallytown; that after this ringing of bells neither car came to a full stop until they passed, when the body of the deceased dropped out; that witness did not tell what struck deceased; all that he could see was the man go out of the window; * * * that it pulled him out, and as the cars passed one another something sounded like the crashing and smashing of wood as one was passing the other, until both cars could separate themselves; that witness was on the back platform when he saw the body of deceased drop; that witness cannot be positive whether the body went out over or under the guard rail; that the car going south was of the same pattern as the one going north; that it was a large car; does not know what they weigh, but they are immense big cars; both were the same size; that both the cars came to a standstill after the man's body went out; that witness went where the man's body lay; that to the best of his recollection it was on all-fours and appeared to be dead.

On cross-examination the witness testified that when he got on the car deceased's arm was resting on the rail and also extending out over the rail, but he could not tell how far, and his

head was resting upon his fingers; that deceased's head was thrown over and back towards the left side, resting upon his fingers or hands; that when he heard the noise or confusion he looked back and saw the body of deceased going out of the space between the two uprights, the one in the rear and the one in front of him; that, when he looked around and saw the body going out, it was up on the highest part of the car, above the rail; that part of the body was outside and part inside of the car; that he did not know or see how the body got into that position; that the bell or gong on the south-bound car gave a warning before it reached the north-bound car, and witness heard it make a considerable noise; that about that time the witness heard the conductor on the north-bound car holler "Look out, there;" that the conductor was up in front collecting fares.

Several other witnesses were called by appellee in corroboration, and their testimony is in substance the same. It may be added that the testimony clearly shows that the space between these two large cars when they passed on the part of the line where the accident occurred was of not more than 2½ or 3 inches, and it is evident that the least rocking or swaying of the cars brings them in contact. That this is a dangerous place for these large cars to pass is shown by the testimony of witnesses called for both parties. Defendant's motormen and conductors who were in charge of the two cars at the time of the accident were called as witnesses, and their testimony, in substance, shows that as a rule the cars were run very slowly at the point where the accident occurred, and that the passengers were warned to keep their arms and hands in. At the time of the accident the cars were not running rapidly, and the motorman on the south-bound car testified that as his car passed the north-bound car he saw deceased resting his arm on the seat, and told him to take it down, and the conductor of the car in which deceased was a passenger testified that he was collecting fares at the front of his car, and called out to the passengers as the cars met to keep their arms inside of the car, loud enough for all to hear. It also appears that there were notices posted in the cars to the effect that passengers must keep their arms and bodies

on the inside of the lines of the car.   The reason given by appellant's employees for warning passengers to take their arms off the rail was because the cars pass so close that it was not safe for passengers to leave their arms on the rail.

There is no proof that the deceased heard any warning, or that, if warning was given and heard, it was in time to enable him to avoid the danger.   Other passengers did not hear any warning given.   Mr. Hunt, a passenger on the same car with deceased, testifies that he heard nothing said or done, or any gongs ringing, or any commotion preceding the accident.   Mr. McGill, the former register of wills in the District, and a passenger upon the same car, testifies that there was a general ringing and clattering of bells, just about the time this thing occurred, almost simultaneously.   Mr. Dixon, who was sitting right behind the deceased on the same side of the car, testifies that the deceased had his arm on the rail, the usual arm rest, and was noticing a little child in front of him; that the deceased had his arm resting on that rail, and he did not notice the car come down on the other track.   Mr. Harding, motorman of the car on which deceased was riding, testifies that he did not remember whether he rang his gong or not at the time of the accident, and that he did not notice whether the motorman of the south-bound car sounded his gong.   It will be seen, therefore, that there was more or less conflict of testimony as to what occurred at the time of the accident.

At the close of the evidence the defendant's counsel requested the court to grant, separately and severally, eight instructions to the jury.   Five of these were refused, and exceptions duly taken.   The court then charged the jury, and counsel for defendant excepted, separately and severally, to four paragraphs of the charge.   The assignment of errors is based upon the refusals to charge, and upon such parts of the charge as were excepted to.

*Mr. C. C. Cole, Mr. J. J. Darlington,* and *Mr. B. W. Parker,* for the appellant:

1. Where a declaration in tort alleges a joint act of negli-

gence by two or more defendants, the declaration is not sustained by proof of separate acts of negligence on the part of each defendant, although such acts of negligence may have contributed to the accident. In such case there is a fatal variance between the allegation and the proof, and no verdict or judgment can be taken upon such declaration and proof against either defendant. *Weist* v. *Philadelphia,* 200 Pa. 148; *Little Schuylkill Nav. R. & Coal Co.* v. *Richards,* 57 Pa. 142, 98 Am. Dec. 209 and note, where there is an instructive discussion upon the subject; *Gallagher* v. *Kemmerer,* 144 Pa. 509; *Leidig* v. *Bucher,* 74 Pa. 67; *Russell* v. *Tomlinson,* 2 Conn. 206; *Adams* v. *Hall,* 2 Vt. 9; *Van Steenberg* v. *Tobias,* 17 Wend. 563; *Buddington* v. *Shearer,* 20 Pick. 477; *Auchmuty* v. *Ham,* 1 Denio, 495; *Partenheimer* v. *Van Order,* 20 Barb. 479.

2. As to steam railways, the voluntary protrusion of any part of the person beyond the outer line of the car, which results in an accident that would not have happened but for such protrusion, is contributory negligence *per se,* which will bar a recovery. *Todd* v. *Old Colony & F. River Co.* 3 Allen, 18; *Pittsburg & C. R. Co.* v. *McClurg,* 56 Pa. 294; *Pittsburg & C. R. Co.* v. *Andrews,* 39 Md. 329; *Indianapolis & C. R. Co.* v. *Rutherford,* 29 Ind. 82; *Louisville & N. R. Co.* v. *Sickings,* 5 Bush, 1; *Holbrook* v. *Utica & S. R. Co.* 12 N. Y. 236; *Dale* v. *Delaware, L. & W. R. Co.* 73 N. Y. 468; *Hallahan* v. *New York, L. E. & W. R. Co.* 102 N. Y. 194; *Breen* v. *New York C. & H. R. R. Co.* 109 N. Y. 297; *Georgia P. R. Co.* v. *Underwood,* 8 So. 116; *Clark* v. *Louisville & N. R. R. Co.* 101 Ky. 34; *Benedict* v. *Minneapolis & St. L. R. Co.* 86 Minn. 224; *Darr* v. *Seaboard & R. R. Co.* 78 Va. 645. The doctrine is applicable to the case of a street railway. *People's Pass. R. Co.* v. *Lauderback,* 4 Pennyp. 406; *Germantown Pass R. Co.* v. *Brophy,* 105 Pa. 38; 2 Wood, Railway Law, pp. 1107, 1108; *Georgia P. R. Co.* v. *Underwood,* 8 So. 116; 2 Shearm. & Redf. Neg. sec. 519.

3. The court erred in refusing to instruct the jury that if they should find from the evidence that the deceased exposed or extended his arm or head, or any part of his person, beyond the

outer part of the car to such an extent that he was struck by the car passing in the opposite direction, and that but for such action on his part the accident would not have happened, then they should find for the defendant. *Flynn* v. *Consolidated Traction Co.* 52 Atl. 369; *Germantown R. Co.* v. *Brophy,* 105 Pa. 38; *People's Pass. R. Co.* v. *Lauderback,* 4 Pennyp. 406; *Zeliff* v. *North Jersey St. R. Co.* 55 Atl. 97.

4. The court erred in refusing to instruct the jury that if they should find from the evidence that the front part of the car passed the plaintiff's intestate without striking him, and that he subsequently changed his position so that the uprights and standards of the car, or some of them in the rear of the front one, struck him and caused the accident, their verdict should be for the defendant.

5. The court erred in refusing to instruct the jury that if they should find from the evidence that the deceased had been in the habit, for several years prior to the accident, of passing over the defendant's road at the place of the accident, that might justify the jury in inferring that he had knowledge of the space between the cars as they passed at the point of the accident, and that if he had such knowledge their verdict should be for the defendant.

6. The court erred in instructing the jury that "the whole question seems to come to the jury to determine whether or not, under the form of the car that was used here, with the width of track that was used here, with the style of open car built as it was, and with this rail in the position it was, there was anything that this company ought to have done, as a prudent and reasonable person, to prevent the happening of an accident of this kind."

7. The court erred in instructing the jury, as stated in the charge: "But notwithstanding that fact, although the plaintiff's intestate may have been clearly at fault and negligent in putting his arm out, or his head, or whatever it was, yet if the defendant did not take such precautions as a prudent and reasonable person ought to take to prevent such an accident, I think the defendant would be liable."

If this statement be law, it strikes down at once the entire doctrine of contributory negligence.

8. The court erred in instructing the jury substantially that, even though they might find that the deceased was guilty of negligence, that he might still recover if they should also find from the evidence that the defendant saw that he was in a position of peril by his own negligence, in time to have prevented the accident, and did not do anything that they ought to have done to prevent it. *Richmond & D. R. Co.* v. *Didzoneit,* 1 App. D. C. 482; *Cullen* v. *Baltimore & P. R. Co.* 8 App. D. C. 69; *Railroad Co.* v. *Houston,* 95 U. S. 697; *St. Louis & S. F. R. Co.* v. *Whittle,* 74 Fed. 298; *New York & N. H. & H. R. Co.* v. *Blessing,* 67 Fed. 277; *Sciurba* v. *Metropolitan Street R. Co.* 73 App. Div. 170; *Catawissa R. Co.* v. *Armstrong,* 49 Pa. 186; *Owen* v. *Hudson River R. Co.* 35 N. Y. 516; *Carrico* v. *West Virginia C. & P. R. Co.* 35 W. Va. 389; *Csatlos* v. *Metropolitan Street R. Co.* 70 App. Div. 606; *Baltimore Consol. R. Co.* v. *Armstrong,* 92 Md. 554; *Jerseyville* v. *Kingston,* 15 Ill. App. 161.

*Messrs. Douglass & Douglass* and *Levi H. David* for the appellee.

*Mr.* Justice DUELL delivered the opinion of the Court:

The alleged errors will be considered in order.

1. The first error is based upon the refusal of the court to instruct the jury that upon the whole evidence in the case the verdict should be for the defendant. It is insisted that it was error to refuse this instruction, first, because of a fatal defect in the pleadings, and, second, on account of contributory negligence. The first point grows out of the fact that the District of Columbia was joined as a defendant, and that upon motion made the court directed a verdict in its favor which left the railway company the sole defendant. The court commenced his charge to the jury by a statement of this fact, and no objection was made to it, and no exception taken; and the rec-

ord fails to disclose that the question was raised at all in any way before the trial court. It does not appear that counsel, in asking this instruction, suggested that one of the grounds asked for the direction was that a verdict had been directed for the codefendant. The objection was not taken in proper form nor in proper time. Perry, Pl. p. 126; *Norman* v. *United States,* 20 App. D. C. 494; *Washington Gaslight Co.* v. *Lansden,* 9 App. D. C. 508. Aside from this, we do not think that the objection could avail the appellant had it been taken in proper form and time.

Referring now to the question of contributory negligence as the ground upon which the court erred in not directing a verdict in favor of the defendant, we are clearly of the opinion that there is no force to the contention. When passengers upon railroads operated by steam have received injuries by reason of the protrusion of their arms out of open windows, the courts in considering such cases have differed as to whether such protrusion is, as matter of law, contributory negligence. There has also been some conflict of decisions when the injured persons have been passengers upon street cars, but the weight of authority is that the question of negligence is a question of fact for the jury, and not a question of law to be ruled upon by the court.

An instructive opinion upon this question is to be found in the dissenting opinion of Judge O'Brien, of the New York court of appeals, in *Sias* v. *Rochester R. Co.* 169 N. Y. 118, 56 L. R. A. 850, 62 N. E. 132. The case went off on a question other than that of negligence, in reference to which question a majority of the court expressed no opinion. At page 125, 56 L. R. A. 853, 62 N. E. 133, Judge O'Brien said:

"The defendant was engaged in exercising a franchise for the conveyance of the public by operating a railroad in a public street. It had the power and it was its duty to construct the railroad in such a way as not to endanger the safety of the passengers. If it constructed its tracks so close to a tree or any other physical obstruction as to endanger the safety of the traveling public it could be held to have neglected its duty, and to

have been wanting in that degree of care and prudence which the law imposed upon it, and so the courts have held in similar cases."

And at page 127, 56 L. R. A. 854, 62 N. E. 134, he said: "Nor has this court ever held that it was contributory negligence, as matter of law, for a passenger to protrude his body slightly beyond the side of the street car, but it has held that the conduct of the passenger in such cases, whether negligent or otherwise, is a question for the jury." Many authorities are cited in support of these propositions.

In *Elliott* v. *Newport Street R. Co.* 18 R. I. 707, 23 L. R. A. 208, 28 Atl. 338, 31 Atl. 694, a passenger riding on the footboard of a car was hit by a trolley pole, which was 10½ inches distant from the outer edge of the footboard, thrown off the car, and injured. The court held than on the testimony it could not say, as matter of law, either that the defendant was not negligent, or that the plaintiff was guilty of negligence which contributed to the accident, and that therefore the court was not warranted in directing a verdict for the defendant. In *Cummings* v. *Worcester, L. & S. Street R. Co.* 166 Mass. 220, 44 N. E. 126, it was held that a street car passenger riding with part of his body projecting beyond the line of a car cannot be held, as matter of law, to be guilty of negligence, or to have assumed the risk of contact with things outside of the car, and that these questions are for the jury. See also *Powers* v. *Boston,* 154 Mass. 60, 27 N. E. 995; *Miller* v. *St. Louis R. Co.* 5 Mo. App. 477; *Spencer* v. *Milwaukee & P. Du Ch. R. Co.* 17 Wis. 487, 84 Am. Dec. 758; *Summers* v. *Crescent City R. Co.* 34 La. Ann. 139, 44 Am. Rep. 419; *Tucker* v. *Buffalo R. Co.* 53 App. Div. 571, 65 N. Y. Supp. 989, Affirmed in 169 N. Y. 589, 62 N. E. 1101.

2. Error is predicated upon the refusal of the court to instruct the jury that, should they find from the evidence that the deceased exposed or extended his arm or head, or any part of his person, beyond the outer part of the car to such an extent that he was struck by the car passing in the opposite direction, and that but for such action on his part the accident would not

have happened, they should find for the defendant.    There was no error on the part of the court in refusing to charge this proposition.    In *Spencer* v. *Milwaukee & P. Du Ch. R. Co.* 17 Wis. 487, 84 Am. Dec. 758, the court pertinently said:    "It is probably the habit of every person while riding in the cars, to rest the arm upon the base of the window.    If the window is open it is liable to extend slightly outside.    This, we suppose, is a common habit.    There is always more or less space between the outside of the car and any structure erected by the side of the track, and must necessarily be so as to accommodate the motion of the car.    Passengers know this and regulate their conduct accordingly.    They do not suppose that the agents and managers of the road suffer obstacles to be so placed as barely to miss the cars while passing."

The uncontradicted testimony shows that the space between two of these cars was not more than 3 inches, and it was gross negligence upon the part of the appellant to use cars which almost touched when they passed, and it was doubly negligent for them to run such cars with the panels taken out, with a running rail placed where the passengers would naturally rest their arms.    At the very least, it was the duty of the company to see that one of the cars came to a full stop, and that the other passed very slowly, because, as is well known, there is more or less swaying of cars when in motion, and the peril was present whenever two open cars met, and the danger was caused by their very close proximity.    As was said by the court in *Geitz* v. *Milwaukee City R. Co.* 72 Wis. 307, 39 N. W. 866:    "We suppose it is common knowledge that a car being propelled upon a railroad track will be swayed by the inequalities of the track."

3. This error is based upon the refusal of the court to instruct the jury that if the deceased changed his position after the front of the car had passed him without striking him, and that by such change of position he was struck by the car, the verdict should be for the defendant.

Danger of being hit by a passing car is not such a peril as a passenger on a street car is bound to anticipate, and in the present case if there was the ringing of gongs and the shouting

that is asserted by some of the witnesses to have occurred before the deceased was struck, it would be quite natural for him to shift his position, although there is no sufficient evidence to warrant such a supposition. A more natural supposition is that if part of the car passed him in safety, that the swaying of the cars brought them closer together and resulted in the relative change of position of the cars, rather than in any change of the position of the deceased. There was no error in the refusal to instruct the jury on this point.

4. This error is based upon the refusal of the court to instruct the jury that if they found the deceased had been in the habit of passing over the defendant's road at the place of the accident, that would justify an inference that he had knowledge of the space between the cars. The evidence discloses that these large cars had been in use from six to twelve months, but there is no evidence that would have warranted the jury in finding how frequently he had been a passenger; and even if he had been a daily passenger there would be no inference that he had knowledge of the space between the cars. He might have been on the cars many times without seeing two of these large cars pass at this dangerous point of the line; and even if the cars had passed, he might well have been occupied with other matters, and not noticed how close together the cars were in passing. As well might a passenger, in order to be free from a charge of contributory negligence, be required to examine the trucks, including the wheels and brakes, the motor, the car body, the track, the competency of the motorman, and everything pertaining to the operation of the line. A common carrier of passengers in street cars cannot shift such burdens upon a passenger. It is the duty of such a carrier to construct its railroad and to use such equipment as will not endanger the safety of its passengers. The fallacy of the proposition advanced by this request to charge is so self-evident that authorities are not required in support of our position that the court did not err in refusing to charge as requested.

5. This error is based upon that portion of the charge which states that "the whole question seems to come to the jury to

determine whether or not, under the form of car that was used here, with the width of track that was used here, with the style of open car built as it was, and with this rail in the position it was, there was anything this company ought to have done as a prudent and reasonable person to prevent the happening of an accident of this kind."

We do not think there is any force in the objection raised to this portion of the charge. In this connection it may be said that the charge should be taken as a whole, and when that charge is fair an appellate court should not labor to sustain an objection based upon a sentence which, taken by itself, may not express in the happiest terms a proposition which is correct. We think a fair construction to be placed upon the clause objected to is that the court instructed the jury that it was for it to determine whether the company could have done anything in reference to the form of the car used and the space between the tracks which would have prevented the happening of the accident. Reference in the paragraph is made to the "open car" and to the position of the rail, and the court was correct in leaving it to the jury to determine whether such a car and such a rail were proper under all the circumstances of the case as proven by the testimony. We would not be warranted in sustaining this objection or predicating error upon this portion of the charge.

6. Error is charged because the court instructed the jury as follows:

"But notwithstanding that fact, although the plaintiff's intestate may have been clearly at fault and negligent in putting his arm out, or his head, or whatever it was, yet if the defendant did not take such precautions as a prudent and reasonable person ought to take to prevent such an accident, I think the defendant would be liable."

It is claimed that this statement strikes down the entire doctrine of contributory negligence. It is admitted that the court, in giving the seventh instruction asked for by appellant, told the jury that if the plaintiff was guilty of contributory

negligence he could not recover, although the defendant was found guilty of negligence.

We think the charge of the court on the question of contributory negligence was eminently fair. We think that there is nothing to which the appellant can fairly take exception in the charge, or in the refusal to charge, upon the subject of contributory negligence. Contributory negligence in this case is based upon the contention that the deceased's arm was outside the car. The weight of authorities, as we have before stated, is that this is a question for submission to the jury. Charges much more favorable to a plaintiff have been made in this line of cases, and sustained by the appellate tribunals. For example, in *Tucker* v. *Buffalo R. Co.* 53 App. Div. 571, 65 N. Y. Supp. 989, it appeared that the plaintiff sat by one of the open windows of the car, with his elbow resting upon the window sill, and the evidence tended to show that it was some 3 inches outside the line of the car. As the car passed another car going in an opposite direction on the switch, the two cars came close to each other. The court charged the jury, in effect, that the plaintiff might recover, although he was riding with his elbow 3 inches outside the car, and although the cars themselves did not actually collide. The appellate court held that there was no error in this charge.

7. The last error is based upon that part of the charge wherein the court said:

"If the plaintiff's intestate was guilty of negligence, and was in a position of apparent peril, and the employees of the defendant company saw that position of apparent peril in time to have prevented the injury, it was their duty, notwithstanding the negligence of the plaintiff's intestate, to do all they could to prevent the accident. If they, in that condition of affairs, failed to exercise due and proper care the plaintiff may still recover.

"I want to make clear to you the other proposition I stated. Notwithstanding the plaintiff's negligence, if the defendant saw that he was in a position of peril by reason of his own negli-

gence, in time to have prevented the accident, and did not do anything that they ought to have done, he could still be allowed to recover, because the direct result of the negligence of the defendant in that case was the cause of the injury. In other words, a man cannot run over another if he sees him in a perilous position, provided he can stop before he does run over him. It is the same way with a railroad company. They could not injure this party if they saw he was there in a perilous position, without undertaking to stop their cars or do something to prevent the accident. If those are the facts, as you find them, the plaintiff may recover."

We think that the general proposition laid down in these paragraphs is a correct one, and that the appellant was not harmed by the statements contained therein. In view of the fact that the court left the question of the contributory negligence of the deceased to the jury, and by their verdict it found that the deceased was not guilty of any negligence which contributed to the accident, the charge here objected to amounts to nothing. There was, however, we think, evidence which rendered such instruction proper. The motorman of the approaching car testifies in substance that he saw the deceased, and at least one other passenger, with their arms resting on the rail, and that he warned them to take them in. In view of this it was for the jury to determine under proper instructions whether everything was done to prevent the accident. It was for the jury to determine whether the motorman, seeing the perilous position of the deceased, should not have endeavored to stop his car. We have said that we believe it was negligence on the part of the appellant not to stop one of the cars when two cars were about to pass at the point where the accident occurred. We have carefully considered the entire charge of the court, and have come to the conclusion that it was eminently fair, and that the appellant has no good ground for its insistence that in its instructions to the jury, or in its refusal to give additional instructions, any error was committed.

No error having been committed, it follows that the judg-

ment of the court below should be affirmed, with costs, and it is so ordered.                          *Affirmed.*

A writ of error to the Supreme Court of the United States was allowed April 12, 1905.